**FILED**

AUG 1 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **19 CR 623** |
| | ) | |
| v. | ) | Violations: Title 18, United States Code, Sections 371 and 1035, and Title 29, United States Code, Section 501 |
| | ) | |
| THOMAS E. CULLERTON | ) | |

JUDGE GETTLEMAN

MAGISTRATE JUDGE ROWLAND

<u>COUNT ONE</u>

THE SPECIAL DECEMBER 2017 GRAND JURY charges:

1.   At times material to this indictment:

<u>Defendant and Illinois State Reporting Requirements</u>

a.   Defendant THOMAS E. CULLERTON was a resident of Villa Park, Illinois, was elected as an Illinois State Senator on or about November 6, 2012, and assumed this office on or about January 9, 2013.

b.   As an elected official, CULLERTON was required by law to annually file a "Statement of Economic Interests" with the Illinois Secretary of State, which would disclose, among other things, certain income received by CULLERTON during the prior calendar year, as well as the nature and source of such income. An elected official that filed a Statement of Economic Interests was required to verify that the information contained in the filing was true, correct and complete.

### Teamsters Union Entities and Individual

c. The International Brotherhood of Teamsters was a "labor organization" within the meaning of Title 29, United States Code, Sections 402(i) and 402(j) that represented and actively sought to represent employees of employers engaged in industries affecting interstate commerce for the purpose of dealing with such employers concerning their employees' wages, hours, and other conditions of employment. The International Brotherhood of Teamsters issued charters to local unions and joint councils of local unions affiliated with the International Brotherhood of Teamsters.

d. Teamsters Joint Council 25, with offices in Park Ridge, Illinois, was a joint council affiliated with the International Brotherhood of Teamsters and was a "labor organization" within the meaning of Title 29, United States Code, Sections 402(i) and 402(j). Teamsters Joint Council 25 represented and actively sought to represent employees of employers engaged in industries affecting interstate commerce including more than approximately 100,000 International Brotherhood of Teamsters members in the Chicago area and northwest Indiana region, and had approximately 26 local union affiliates. The vast majority of the annual expenses of the Teamsters Joint Council 25 were funded by a "per capita tax" paid to Teamsters Joint Council 25 by its affiliated local unions and their members.

e. Teamsters Joint Council 25 employed individuals known as "organizers," whose duties included recruiting new members to the International Brotherhood of Teamsters and supporting labor strikes and picketing activities on behalf

of Teamsters union members. Employees of Teamsters Joint Council 25, including organizers, were paid twice a month, and their salaries were funded in part by the "per capita tax" paid by the local unions affiliated with Joint Council 25 and their members.

  f. Teamsters Local Union 734, with offices in Chicago, Illinois, was issued a charter by the International Brotherhood of Teamsters, and was a "labor organization" within the meaning of Title 29, United States Code, Sections 402(i) and 402(j) which represented and actively sought to represent employees of employers engaged in industries affecting interstate commerce as the local union body through which such employees enjoyed membership and became affiliated with the International Brotherhood of Teamsters.

  g. Teamsters Local Union 734 Health and Welfare Fund, sometimes referred to as the Local 734 Welfare Fund, was an employee welfare benefit plan subject to Title I of the Employee Retirement Income Security Act (hereinafter, "ERISA"), that was established and maintained by an employee organization representing employees engaged in interstate commerce and in industries and activities affecting interstate commerce for the purpose of providing employee welfare benefits to the members of Teamsters Local Union 734 and other eligible employees as participants in accordance with documents governing the plan, commonly known as the Local 734 Health & Welfare EIN: 36-2272414 Plan No. 501 (the "health and welfare plan"). The Health and Welfare Fund, as operated consistent with the health and welfare plan, was a private plan affecting commerce under which medical benefits, items and services were provided to individuals, and constituted a health care benefit program within the meaning of Title 18,

United States Code, Section 24(b). The Health and Welfare Fund provided plan participants and their families with medical benefits. Employers who entered into collective bargaining and other agreements with Teamsters Local Union 734 were contractually required to make contributions to the Health and Welfare Fund for the benefit of their employees who were members of Teamsters Local Union 734 and other eligible participants in the Health and Welfare Fund. In order to be an eligible participant and receive payments from the Health and Welfare Fund as an active employee, the health and welfare plan required, among other things, that an employee be regularly scheduled to work at least thirty hours per week.

  h. Teamsters Local Union 734 Pension Fund was an employee pension benefit plan subject to Title I of ERISA, that was established and maintained by an employee organization representing employees engaged in interstate commerce and in industries and activities affecting interstate commerce for the purpose of providing retirement benefits for such employees as members of Teamsters Local Union 734 and other eligible participants in the plan in accordance with documents governing the plan, commonly known as the Local 734 Pension Fund EIN: 51-6040136 Plan No. 001 (the "pension plan"). The Pension Fund, as operated consistent with the pension plan, provided plan participants with retirement benefits. Employers who entered into collective bargaining and other agreements with Teamsters Local Union 734 were contractually required to make contributions to the Pension Fund for the benefit of their employees who were members of Teamsters Local Union 734 and other eligible participants in the Pension Fund. In order to accrue additional benefits on an ongoing

basis from the Pension Fund through continued employment, known as "benefit service," the pension plan required an employee to work at least twenty-two weeks a year.

  i. Before assuming office as an Illinois State Senator, CULLERTON worked at Company A and was a member of Teamsters Local Union 734. However, shortly after CULLERTON was elected to the Illinois Senate on or about November 6, 2012, CULLERTON's employment with Company A was terminated, and due to the termination of his employment with Company A, CULLERTON was no longer an eligible participant in the Teamsters Local Union 734 Health and Welfare Fund and could no longer accrue additional benefit service from the Teamsters Local Union 734 Pension Fund.

  j. Individual A was the President of Teamsters Joint Council 25.

  2. Beginning in or around 2013 and continuing to in or around February 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

THOMAS E. CULLERTON,

defendant herein, did knowingly conspire with Individual A and others known and unknown to the Grand Jury to:

  a. embezzle, steal, and unlawfully and willfully abstract and convert to his own use, the moneys, funds, property, and other assets of a labor organization, namely, Teamsters Joint Council 25, by which he was employed, in violation of Title 29, United States Code, Section 501(c); and

  b. embezzle, steal, and unlawfully and willfully abstract and convert to his own use and the use of others, the moneys, funds, securities, premiums, credits,

property, and other assets of an employee welfare benefit plan and an employee pension benefit plan, and of a fund connected therewith, namely, the Teamsters Local Union 734 Health and Welfare Fund and the Teamsters Local Union 734 Pension Fund, in violation of Title 18, United States Code, Section 664.

3. It was part of the conspiracy that in or around March 2013, CULLERTON was hired by Individual A as a purported full-time salaried employee and organizer of Teamsters Joint Council 25 for the purpose of CULLERTON obtaining money and other employee benefits from Teamsters Joint Council 25, the Teamsters Local Union 734 Health and Welfare Fund, and the Teamsters Local Union 734 Pension Fund to which CULLERTON was not entitled.

4. It was further part of the conspiracy that in or around March 2013, Individual A caused Teamsters Joint Council 25 to enter into a participation agreement with the Teamsters Local Union 734 Health and Welfare Fund and the Teamsters Local Union 734 Pension Fund, whereby Teamsters Joint Council 25 agreed to make contributions to the Teamsters Local Union 734 Health and Welfare Fund and the Teamsters Local Union 734 Pension Fund for selected employees, thereby enabling CULLERTON to continue to be eligible to receive employee welfare and pension benefits from these employee benefit plans on the false pretense that he had legitimate full-time employment with Teamsters Joint Council 25. As part of this participation agreement, Joint Council 25 agreed to maintain complete and accurate records to substantiate the employment of those covered by the agreement, such as CULLERTON.

5. It was further part of the conspiracy that Individual A caused salary payments to be made by Teamsters Joint Council 25 to CULLERTON, even though Individual A well knew that CULLERTON was doing little or no work for Teamsters Joint Council 25 during each pay period he was paid full-time salary as an organizer.

6. It was further part of the conspiracy that CULLERTON was paid a monthly car and telephone allowance by Teamsters Joint Council 25, even though CULLERTON did little or no work for Teamsters Joint Council 25 during each month CULLERTON was paid such car and telephone allowances.

7. It was further part of the conspiracy that CULLERTON was paid a bonus in or around December 2013, December 2014, and December 2015, even though CULLERTON did little or no work for Teamsters Joint Council 25 each year.

8. It was further part of the conspiracy that Individual A caused contribution payments to be sent to the Teamsters Local Union 734 Health and Welfare Fund and the Teamsters Local Union 734 Pension Fund pursuant to the participation agreement for the benefit of CULLERTON, even though Individual A well knew that CULLERTON was doing little or no work for Teamsters Joint Council 25 during the pay periods for which such contributions were made. These contribution payments were accompanied by remittance documents that made it falsely appear that the payments were made for approximately four or five weeks' worth of full-time work performed by CULLERTON.

9. It was further part of the conspiracy that CULLERTON used the proceeds of payments made to him by Teamsters Joint Council 25 to pay personal expenses, such as his mortgage, utilities, and groceries, and continued to accept benefits from the

Teamsters Local Union 734 Health and Welfare Fund and the Teamsters Local Union 734 Pension Fund even though CULLERTON did little or no work in return for such payments.

10. It was further part of the conspiracy that CULLERTON continued to receive from Teamsters Joint Council 25 payment of full-time salary, allowances, and contributions for health and welfare and pension plan benefits, even when CULLERTON attended sessions of the Illinois State Senate and when CULLERTON was otherwise performing his duties as a Senator in Springfield, Illinois.

11. It was further part of the conspiracy that CULLERTON repeatedly failed to respond to efforts by his supervisors at Teamsters Joint Council 25 to contact him and routinely ignored their requests that he perform the job functions of an organizer, as was required of other organizers employed by Teamsters Joint Council 25.

12. It was further part of the conspiracy that Individual A ignored and failed to act upon repeated complaints made by a supervisory employee of Teamsters Joint Council 25, who advised Individual A that CULLERTON did not show up for work and did not perform the functions of a full-time salaried organizer.

13. It was further part of the conspiracy that CULLERTON filed Statements of Economic Interests for calendar years 2013 and 2014 with the Illinois Secretary of State. These statements made it falsely appear that CULLERTON had received income each year for legitimately working as an organizer for Teamsters Joint Council 25, when CULLERTON well knew that he was not legitimately employed as an organizer for Teamsters Joint Council 25.

14. It was further part of the conspiracy that CULLERTON filed Statements of Economic Interests for calendar years 2015 and 2016 with the Illinois Secretary of State. In these statements, CULLERTON falsely omitted income CULLERTON had received from Teamsters Joint Council 25 in 2015 and 2016.

15. As a result of the conspiracy, the defendant fraudulently obtained and misappropriated for his own benefit and the benefit of others (i) approximately $188,320 in salary, allowances, bonuses, and other benefits from Teamsters Joint Council 25 and its members, (ii) approximately $64,068 in health and welfare plan and pension plan contributions from Teamsters Joint Council 25 and its members; and (iii) approximately $21,678 in reimbursed medical claims from Teamsters Local Union 734's Health and Welfare Fund, for a total loss of approximately $274,066.

16. It was further part of the conspiracy that the conspirators misrepresented, concealed and hid, caused to be misrepresented, concealed and hidden, and attempted to misrepresent, conceal and hide acts done in furtherance of the conspiracy and the purpose of those acts done in furtherance of the conspiracy.

### Overt Acts

17. To effect the objects of the conspiracy, defendant THOMAS E. CULLERTON committed and caused to be committed the following overt acts, among others, in the Northern District of Illinois, Eastern Division and elsewhere:

   a. On or about January 20, 2015, CULLERTON caused to be delivered by mail an envelope addressed to Local 734 Health & Welfare/Pension, 6643 N.

Northwest Hwy, Chicago, IL 60631, which envelope contained a pension contribution check for $575 made out to Local 734 Pension.

  b.   On or about February 18, 2015, CULLERTON caused to be delivered by mail an envelope addressed to Local 734 Health & Welfare/Pension, 6643 N Northwest Hwy, Chicago, IL 60631, which envelope contained a health and welfare contribution check for $1,375 made out to Local 734 Health & Welfare.

  c.   On or about March 18, 2015, CULLERTON caused to be delivered by mail an envelope addressed to Local 734 Health & Welfare, 6643 N Northeast Hwy, Chicago, IL 60631-1360, which envelope contained a health and welfare contribution check for $1,100 made out to Local 734 Health & Welfare.

  d.   On or about October 15, 2015, CULLERTON caused a funds transfer in the amount of approximately $1,692.79, which funds were credited to account number *******388 at West Suburban Bank.

  e.   On or about November 13, 2015, CULLERTON caused a funds transfer in the amount of approximately $1,692.79, which funds were credited to account number *******388 at West Suburban Bank.

  f.   On or about December 15, 2015, CULLERTON caused a funds transfer in the amount of approximately $1,692.79, which funds were credited to account number *******388 at West Suburban Bank.

  g.   On or about January 15, 2016, CULLERTON caused a funds transfer in the amount of approximately $1,694.08, which funds were credited to account number *******388 at West Suburban Bank.

   h. On or about April 26, 2016, CULLERTON submitted and caused to be submitted to the Office of the Secretary of State of Illinois a signed Statement of Economic Interests for calendar year 2015, which falsely omitted reference to funds CULLERTON received from Teamsters Joint Council 25 in 2015.

   i. On or about April 28, 2017, CULLERTON submitted and caused to be submitted to the Office of the Secretary of State of Illinois a signed Statement of Economic Interests for calendar year 2016, which falsely omitted reference to funds CULLERTON received from Teamsters Joint Council 25 in 2016.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FORTY

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1. Paragraph 1 of this indictment is incorporated here.

2. On or about the dates set forth below, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### THOMAS E. CULLERTON,

defendant herein, did embezzle, steal, and unlawfully and willfully abstract and convert to his own use, the moneys, funds, property, and other assets of a labor organization, namely, Teamsters Joint Council 25, by which he was employed, in the approximate amounts set forth below:

| COUNT | DATE | AMOUNT |
|---|---|---|
| Two | January 15, 2015 | $1,648.63 |
| Three | January 30, 2015 | $2,531.83 |
| Four | February 13, 2015 | $1,648.63 |
| Five | February 27, 2015 | $1,648.63 |
| Six | February 27, 2015 | $1,059.14 |
| Seven | March 13, 2015 | $1,648.63 |
| Eight | March 31, 2015 | $1,648.63 |
| Nine | March 31, 2015 | $1,059.14 |
| Ten | April 15, 2015 | $1,648.63 |
| Eleven | April 30, 2015 | $1,648.63 |

| COUNT | DATE | AMOUNT |
|---|---|---|
| Twelve | April 30, 2015 | $1,059.14 |
| Thirteen | May 15, 2015 | $1,648.63 |
| Fourteen | May 29, 2015 | $1,692.79 |
| Fifteen | May 29, 2015 | $1,216.34 |
| Sixteen | June 15, 2015 | $1,692.79 |
| Seventeen | June 30, 2015 | $1,692.79 |
| Eighteen | June 30, 2015 | $1,216.34 |
| Nineteen | July 15, 2015 | $1,692.79 |
| Twenty | July 31, 2015 | $1,692.79 |
| Twenty-One | July 31, 2015 | $1,216.34 |
| Twenty-Two | August 14, 2015 | $1,692.79 |
| Twenty-Three | August 31, 2015 | $1,692.79 |
| Twenty-Four | August 31, 2015 | $1,216.34 |
| Twenty-Five | September 15, 2015 | $1,692.79 |
| Twenty-Six | September 30, 2015 | $1,692.79 |
| Twenty-Seven | September 30, 2015 | $1,216.34 |
| Twenty-Eight | October 15, 2015 | $1,692.79 |
| Twenty-Nine | October 30, 2015 | $1,692.79 |
| Thirty | October 30, 2015 | $1,216.34 |
| Thirty-One | November 13, 2015 | $1,692.79 |
| Thirty-Two | November 30, 2015 | $1,692.79 |

| COUNT | DATE | AMOUNT |
|---|---|---|
| Thirty-Three | November 30, 2015 | $1,216.34 |
| Thirty-Four | December 15, 2015 | $1,692.79 |
| Thirty-Five | December 15, 2015 | $899.44 |
| Thirty-Six | December 31, 2015 | $1,692.79 |
| Thirty-Seven | December 31, 2015 | $1,216.34 |
| Thirty-Eight | January 15, 2016 | $1,694.08 |
| Thirty-Nine | January 29, 2016 | $1,667.68 |
| Forty | January 29, 2016 | $1,217.11 |

In violation of Title 29, United States Code, Section 501(c).

## COUNT FORTY-ONE

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1. Paragraph 1 of Count One of this indictment is incorporated here.

2. Beginning in or around March 2013 and continuing until in or around April 2016, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### THOMAS E. CULLERTON,

defendant herein, in a matter involving a health care benefit program, did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact in connection with the delivery of and payment for health care benefits, items, and services.

3. It was part of the scheme that CULLERTON sought to obtain health care benefits through the Teamster Local Union 734 Health and Welfare Fund by falsely representing himself to the Teamsters Local Union 734 Health and Welfare Fund to be a full-time employee of Joint Council 25, and by concealing and covering up that he was in fact not a full-time employee of Joint Council 25.

4. It was further part of the scheme that CULLERTON caused contribution payments to be sent to the Teamsters Local Union 734 Health and Welfare Fund that made it falsely appear that CULLERTON was a full-time employee of Joint Council 25.

5. It was further part of the scheme that CULLERTON submitted or caused to be submitted to the Teamsters Local Union 734 Health and Welfare Fund health care benefit claims and related paperwork for health care services that were provided to CULLERTON and members of his family, but in doing so, CULLERTON concealed and covered up that he was not eligible for participation in the Health and Welfare Fund as

an active employee, in that CULLERTON was not regularly scheduled to work at least thirty hours per week for Joint Council 25 and in fact did not work thirty hours per week for Joint Council 25.

6. It was further part of the scheme that CULLERTON submitted and caused to be submitted to medical providers information that made it appear that he was employed by Teamsters Local Union 734 as a "route salesman," and in doing so, CULLERTON concealed and covered up that he was not eligible for participation in the Health and Welfare Fund as an active employee, in that CULLERTON was not regularly scheduled to work at least thirty hours per week for Teamsters Local Union 734, Joint Council 25, or any other employer that participated in the Health and Welfare Fund.

7. It was further part of the scheme that CULLERTON obtained payment for approximately $21,678 in health care benefits, items, and services from the Teamsters Local Union 734 Health and Welfare Fund even though he was not eligible to participate in the health and welfare plan as an active employee.

In violation of Title 18, United States Code, Section 1035(a)(1).

## FORFEITURE ALLEGATION

The SPECIAL DECEMBER 2017 GRAND JURY alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Sections 371 and 1035(a)(1), and Title 29, United States Code, Section 501(c), as set forth in this indictment, defendant THOMAS E. CULLERTON shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of at least approximately $274,066.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, including, but not limited to, the following property, as provided in Title 21, United States Code, Section 853(p):  The real property commonly known as 126 North Charles Avenue, Villa Park, Illinois 60181, legally described as follows:

> LOT 76 IN F.D. PAYNE'S ADDITION TO VILLA PARK, BEING A SUBDIVISION IN THE SOUTHWEST QUARTER OF SECTION 3, TOWNSHIP 39 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL

MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 8, 1922, AS DOCUMENT 155003, IN DUPAGE COUNTY, ILLINOIS.   PIN: 06-03-310-019.

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY