

FILED
3/8/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 623 |
| v. | Hon. Robert W. Gettleman |
| THOMAS E. CULLERTON | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant THOMAS E. CULLERTON, and his attorney, DANIEL COLLINS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371 (Count One), embezzlement of union funds, in violation of Title 29, United States Code, Section 501(c) (Counts Two through Forty), and concealing a material fact in connection with the delivery of health benefits, in violation of Title 18, United States Code, Section 1035(a)(1) (Count Forty-One).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Two, which charges defendant with embezzlement of union funds, in violation of Title 29, United States Code, Section 501(c). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

On or about January 15, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant THOMAS E. CULLERTON did embezzle, steal, and unlawfully and willfully abstract and convert to his own use, the moneys, funds, property, and other assets of a labor organization, namely, Teamsters Joint Council 25, by which he was employed, in the approximate amount of $1,648.63, in violation of Title 29, United States Code, Section 501(c).

## Background concerning the Teamsters

The International Brotherhood of Teamsters was a "labor organization" within the meaning of Title 29, United States Code, Sections 402(i) and 402(j) that represented and

actively sought to represent employees of employers engaged in industries affecting interstate commerce for the purpose of dealing with such employers concerning their employees' wages, hours, and other conditions of employment. The International Brotherhood of Teamsters issued charters to local unions and joint councils of local unions affiliated with the International Brotherhood of Teamsters. Teamsters Joint Council 25, with offices in Park Ridge, Illinois, was a joint council affiliated with the International Brotherhood of Teamsters and was a "labor organization" within the meaning of Title 29, United States Code, Sections 402(i) and 402(j). Teamsters Joint Council 25 represented and actively sought to represent employees of employers engaged in industries affecting interstate commerce including more than approximately 100,000 International Brotherhood of Teamsters members in the Chicago area and northwest Indiana region, and had approximately 26 local union affiliates.

Teamsters Joint Council 25 employed individuals known as "organizers," whose duties included recruiting new members to the International Brotherhood of Teamsters and supporting labor strikes and picketing activities on behalf of Teamsters union members. Employees of Teamsters Joint Council 25, including organizers, were paid twice a month, and their salaries were funded in part by a "per capita tax" paid by the local unions affiliated with Joint Council 25 and their members.

Teamsters Local Union 734, with offices in Chicago, Illinois, was issued a charter by the International Brotherhood of Teamsters, and was a "labor organization" within the meaning of Title 29, United States Code, Sections 402(i) and 402(j) which represented

and actively sought to represent employees of employers engaged in industries affecting interstate commerce as the local union body through which such employees enjoyed membership and became affiliated with the International Brotherhood of Teamsters.

Teamsters Local Union 734 Health and Welfare Fund, sometimes referred to as the Local 734 Welfare Fund, was an employee welfare benefit plan subject to Title I of the Employee Retirement Income Security Act (hereinafter, "ERISA"), that was established and maintained by an employee organization representing employees engaged in interstate commerce and in industries and activities affecting interstate commerce for the purpose of providing employee welfare benefits to the members of Teamsters Local Union 734 and other eligible employees as participants in accordance with documents governing the plan, commonly known as the Local 734 Health & Welfare EIN: 36-2272414 Plan No. 501 (the "health and welfare plan"). The Health and Welfare Fund provided plan participants and their families with medical benefits. Employers who entered into collective bargaining and other agreements with Teamsters Local Union 734 were contractually required to make contributions to the Health and Welfare Fund for the benefit of their employees who were members of Teamsters Local Union 734 and other eligible participants in the Health and Welfare Fund. In order to be an eligible participant and receive payments from the Health and Welfare Fund as an active employee, the health and welfare plan required, among other things, that an employee be regularly scheduled to work at least thirty hours per week.

Teamsters Local Union 734 Pension Fund was an employee pension benefit plan subject to Title I of ERISA, that was established and maintained by an employee organization representing employees engaged in interstate commerce and in industries and activities affecting interstate commerce for the purpose of providing retirement benefits for such employees as members of Teamsters Local Union 734 and other eligible participants in the plan in accordance with documents governing the plan, commonly known as the Local 734 Pension Fund EIN: 51-6040136 Plan No. 001 (the "pension plan"). The Pension Fund, as operated consistent with the pension plan, provided plan participants with retirement benefits. Employers who entered into collective bargaining and other agreements with Teamsters Local Union 734 were contractually required to make contributions to the Pension Fund for the benefit of their employees who were members of Teamsters Local Union 734 and other eligible participants in the Pension Fund.

### Cullerton's Embezzlement

CULLERTON worked at Company A and was a member of Teamsters Local Union 734. However, on or about November 6, 2012, CULLERTON's employment with Company A was terminated as a result of Company A filing for bankruptcy protection, and due to the termination of his employment with Company A, CULLERTON was no longer an eligible participant in the Teamsters Local Union 734 Health and Welfare Fund and could no longer accrue additional benefits under the Teamsters Local Union 734 Pension Fund.

In or around March 2013, CULLERTON was hired by Teamsters Joint Council 25 as a purported full-time salaried employee and organizer of Teamsters Joint Council 25. CULLERTON remained on the payroll of Teamsters Joint Council 25 until in or around February 2016. During this time period, CULLERTON received salary payments, a monthly car and telephone allowance, as well as an annual bonus from Teamsters Joint Council 25. In addition, Teamsters Joint Council 25 remitted payments to the Teamsters Local Union 734 Health and Welfare Fund and the Teamsters Local Union 734 Pension Fund to fund CULLERTON's participation in the health and welfare plan and the pension plan. Defendant used the payments made to him by Teamsters Joint Council 25 to pay personal expenses, such as his mortgage, utilities, and groceries, and continued to accept benefits from the Teamsters Local Union 734 Health and Welfare Fund and the Teamsters Local Union 734 Pension Fund.

Although CULLERTON received the above-referenced benefits between in or around March 2013 and in or around February 2016, CULLERTON did little to no work each pay period in return for these benefits. Indeed, outside of isolated pockets of activity, including for a brief period after he was first hired in 2013, and in the summers of 2013 and 2014, CULLERTON did not report for work, did not answer requests or take assignments from supervisors, and failed to perform any work of any value for Teamsters Joint Council 25. For approximately the last year he was on the payroll for Teamsters Joint Council 25, that is, between in or around January 2015 and in or around January 29, 2016, CULLERTON performed no work at all of value for Teamsters Joint Council 25.

6

CULLERTON thereby embezzled, stole, and unlawfully and willfully abstracted and converted to his own use, the money, funds, property, and other assets of Teamsters Joint Council 25 by drawing and benefitting from a full-time salary, allowances, and contributions made on his behalf to the health and welfare and pension plan benefits when he provided little or no work or anything else of value in return.

The defendant repeatedly failed to respond to efforts by his supervisors at Teamsters Joint Council 25 to contact him and routinely ignored their requests that he perform the job functions of an organizer, as was required of other organizers employed by Teamsters Joint Council 25.

On or about January 15, 2015, CULLERTON embezzled, stole, and unlawfully and willfully abstracted and converted to his own use, the money, funds, property, and other assets of Teamsters Joint Council 25, namely a payment of $1,648.63 from Teamsters Joint Council 25, which he was not entitled to on account of the fact that he did no work for Teamsters Joint Council 25 in return for this payment. Moreover, as a result of his conduct, the defendant fraudulently obtained and misappropriated for his own benefit and the benefit of others (i) approximately $169,488 in salary, allowances, bonuses, and other benefits from Teamsters Joint Council 25 and its members, (ii) approximately $57,662 in health and welfare plan and pension plan contributions from Teamsters Joint Council 25 and its members; and (iii) approximately $21,678 in reimbursed medical claims from Teamsters Local Union 734's Health and Welfare Fund, for a total loss of approximately $248,828.

<u>Maximum Statutory Penalties</u>

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

<u>Sentencing Guidelines Calculations</u>

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid

8

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

       9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

          a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

          b.    **Offense Level Calculations**.

              i.    Pursuant to Guideline § 2B1.1(a)(2), the base offense level is 6.

              ii.    Pursuant to Guideline § 2B1.1(b)(1)(F), the offense level is increased by 10 levels because the loss was more than $150,000 but less than $250,000.

              iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy

any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

          iv.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

     c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

     d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level, is 13 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 12 to 18 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

     e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that

further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the

11

sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount of $1,648.63 to Teamsters Joint Council 25, which amount shall reflect any credit for funds repaid prior to sentencing. Defendant also agrees to pay additional restitution to Teamsters Joint Council 25 and Teamsters Local Union 734's Health and Welfare Fund in the amount of $247,179.37, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

12

17.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Forfeiture

18.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property which constitutes and is derived from proceeds traceable to the offense.

19.      Defendant agrees to the entry of a personal money judgment in the amount of $248,828, which represents the total amount of proceeds traceable to the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

20.     Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2). The forfeiture allegation in the indictment alleges that the real property commonly known as 126 North Charles Avenue, Villa Park, Illinois 60181, is available as a substitute asset.

21.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United

States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

22. The government agrees it will not seek forfeiture of the real property commonly known as 126 North Charles Avenue, Villa Park, Illinois 60181, and shall record a release of its *lis pendens* against the property, in the event the defendant makes restitution payments totaling $25,000 within thirty days of the entry of his guilty plea.

23. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

24. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 623.

25. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release

14

by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

26. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

b. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

27. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

28. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

29. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and

17

may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

30. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

31. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32. Defendant understands that pursuant to Title 29, United States Code, Sections 504 and 1111, his conviction in this case will prohibit him from serving or being permitted to serve in certain offices, positions, and capacities relating to labor organizations, employee benefit plans, and other entities, as described in Title 29, United

States Code, Sections 504 and 1111, for the period of thirteen years after conviction or after the end of any incarceration, whichever is later, unless the Court, pursuant to the Sentencing Guidelines and policy statements under Title 28, United States Code, Section 994(a), determines that defendant's direct or indirect service with or to a labor organization or employee benefit plan would not be contrary to the purposes of Title 29, United States Code, Sections 504 and 1111. Defendant further understands that if he violates this prohibition, he may be punished by imprisonment for up to five years and a fine of up to $250,000.

33. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

34. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant

understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

36. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

37. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 3-7-22

JOHN R. LAUSCH, JR.
United States Attorney

THOMAS E. CULLERTON
Defendant .

AMARJEET S. BHACHU
ERIKA L. CSICSILA
Assistant United States Attorneys

DANIEL COLLINS
Attorney for Defendant